## State of Connecticut *v.* Kamal Mahmood

King, C. J., Alcorn, House, Thim and Ryan, Js.

Argued November 7—decided December 3, 1969

*Jerrold H. Barnett,* with whom were *Frank J. Mongillo, Jr.,* and, on the brief, *David E. Fitzgerald, Jr.,* for the appellant (defendant).

*David B. Salzman,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ALCORN, J. The defendant shot and killed a man and was convicted, by a jury, of murder in the second degree. He has appealed from the judgment rendered on the verdict, and the only issue pursued on the appeal is a ruling on evidence. The defendant claims that the court erroneously excluded inquiry concerning a conversation which had taken place between the defendant and two of the state's witnesses some time before the date of the shooting from which the defendant wished to show that the two witnesses were biased against him.

None of the circumstances concerning the shooting appear in the finding, which is not attacked. Although they are not pertinent to a decision of the question before us, we note that recitals in the appendices to the briefs make it appear that the shooting was the culmination of an altercation and scuffle at a "social club" during which the deceased was armed with a knife and the defendant was armed with a revolver and which arose because the deceased refused to play cards with the defendant. Ten or eleven men were in the club when the fracas started, but four of them left before the shooting. Two of the persons who remained and who witnessed the shooting were Savvas Sidiropoulos and Anthony DelVecchio.

A ruling on evidence must be tested by the finding. Practice Book § 648; *Casalo* v. *Claro,* 147 Conn. 625,

627, 165 A.2d 153. The finding relating to the ruling which is in issue discloses that the defendant, testifying in his own behalf, stated that DelVecchio came to his restaurant before January 31, 1967, and that they had a conversation. The finding then recites that the defendant was asked, "And what was that conversation?" The finding does not specify who asked the question or whether it was asked on direct or cross examination. From the ensuing discussion we learn that the question was asked by the defendant's counsel on direct examination. The state objected to the question, and the court inquired as to the questioner's claim for the admissibility of the question. Defense counsel responded: "Well, it does come within the realm of hearsay. I appreciate that." At the request of defense counsel the jury were then excused. In the absence of the jury, defense counsel stated that his purpose in asking the question was "in reference to a conversation that took place between Tony DelVecchio, and Sam was present, with Mr. Mahmood in which Tony had asked him if he would purchase certain articles and told him that the articles could be bought very cheaply and had mentioned that it was hot stuff in which Mr. Mahmood said he didn't want it and would have nothing to do with it." Counsel went on to state that he wished "to show that there was some words said at that time by Mr. Mahmood to both of them that would, as I say, account for their attitude and the manner in which they testified against him on this witness stand." The state objected "not only on the hearsay basis but because it is attempting to show the commission of a crime on the part of the witness when there has been no conviction." The court ruled that to allow the question would be "admitting hearsay for the purpose of showing some

improper action on the part of the two witnesses who were not favorable, and I think that it is going also far beyond anything that is relevant here." Defense counsel duly excepted to the ruling.

We have ascertained from the record that the defendant stood accused of having committed the murder on January 31, 1967, and that the verdict was rendered on May 31, 1967. There is nothing in the finding or in the record to indicate how long before January 31, 1967, the conversation referred to had taken place or how long it had occurred before the two witnesses had testified in the case. We deduce from the quoted portions of the finding that the declared purpose of defense counsel was to show that something had been said by the defendant during a conversation on an undisclosed date from which the jury would be asked to infer that some bias or prejudice against the defendant could have been created in the minds of the witnesses Del-Vecchio and "Sam."

Declarations or conduct tending to indicate malice or ill will toward another are generally admissible in situations where such states of mind are material. *State* v. *Kurz,* 131 Conn. 54, 63, 37 A.2d 808; *Verdi* v. *Donahue,* 91 Conn. 448, 451, 99 A. 1041; *State* v. *Riggs,* 39 Conn. 498, 503; *State* v. *Alford,* 31 Conn. 40, 43. The bias or prejudice of a witness may properly be shown either by cross-examination or by testimony of other witnesses. *Fairbanks* v. *State,* 143 Conn. 653, 657, 124 A.2d 893; see *Fordiani's Petition,* 99 Conn. 551, 560, 121 A. 796. The finding in the present case does not disclose whether the witnesses who were claimed to be biased or prejudiced had been cross-examined on the subject, but, in view of the admission that they had not been which we find in the briefs of both the defendant

and the state, we have decided to take cognizance of that fact.

The cross-examination of a witness in an effort to show his own motive, interest, bias or prejudice against a party is a matter of right, although the extent of such cross-examination is within the judicial discretion of the court. *State* v. *Tropiano,* 158 Conn. 412, 426, 262 A.2d 147; *State* v. *Luzzi,* 147 Conn. 40, 46, 156 A.2d 505. It is an established rule in this state also that, where no foundation has been laid by cross-examination of the witness who is under attack for bias or prejudice, the decision whether or not to admit impeaching statements made by him out of court to, or in the presence of, others lies within the judicial discretion of the court. *Fairbanks* v. *State,* supra, and cases cited. In the case before us, however, there was not only no cross-examination of the witnesses who were under attack on the subject of bias or prejudice but also there was no offer of evidence of statements made by them out of court indicating bias or prejudice. The offer was of some statement claimed to have been made by the defendant which counsel apparently intended to argue would inferentially arouse the bias or prejudice of the witnesses.

The trier has wide discretion in ruling on the relevancy of evidence. *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639, and cases cited. It is a reasonable exercise of judicial discretion to exclude questions which would introduce issues foreign to the case; *State* v. *Dortch,* 139 Conn. 317, 325, 93 A.2d 490; or evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case. *State* v. *Bassett,* 151 Conn. 547, 551, 200 A.2d 473.

It is a fundamental rule of appellate procedure in the review of evidential rulings "that an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153. And this includes an obligation to give "the court some inkling as to the ground of admissibility claimed." Ibid. Neither the record nor the finding in the case before us includes the facts necessary for an understanding of the relevancy or materiality of the evidence which the defendant sought to offer as required by Practice Book § 648. *Megin* v. *Carney,* 148 Conn. 130, 134, 167 A.2d 855. Nor are we satisfied that the trial court was given any clear understanding of the proposition it was asked to rule on. The jury having been excused, the defendant's counsel was under no restraint to indicate to the court something of the substance and nature of the evidence which he proposed to offer. So far as the finding discloses all that the court had before it was counsel's representation that at some undisclosed time before the date of the murder a conversation had taken place between the defendant and DelVecchio at which "Sam" was present and that the defendant was supposed to have said something which would create bias or prejudice against him in the minds of those persons. Included in the representation made to the court was the suggestion that DelVecchio was attempting to sell stolen goods to the defendant. From counsel's statement there was no indication that he would attempt to introduce any statement or act of the witnesses themselves which would indicate any bias or prejudice against the defendant. The suggestion was only that some statement made by the defendant would be offered which would be of such a nature that the jury would

be justified in inferring that it was more probable than not that the witnesses would have developed a bias or prejudice against the defendant. Defense counsel himself suggested that the conversation was within the realm of hearsay and it clearly carried the implication that it would convey to the jury the impression that DelVecchio may have been involved in some criminal activity even though no conviction of crime had been shown to affect his credibility. See General Statutes § 52-145; *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 470, 208 A.2d 341. Had defense counsel complied with the requirements of § 226 of the Practice Book, the court's attention would have been directed to the precise ruling it was required to make. *Casalo* v. *Claro,* supra, 629. Under the circumstances disclosed by the finding, the court did not abuse its discretion in excluding the question. A ruling on evidence must be both wrong and probably harmful in order to constitute reversible error. *State* v. *Fredericks,* 154 Conn. 68, 72, 221 A.2d 585. The finding in the present case does not indicate the presence of either requirement.

There is no error.

In this opinion the other judges concurred.