THE FIRST ECCLESIASTICAL SOCIETY OF THE TOWN OF BRANFORD v. THOMAS E. SLOANE ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

612

Argued May 10—decided June 11, 1963

*Charles A. Watrous,* with whom was *William P. Simon,* for the appellant (plaintiff).

*John J. Resnik,* with whom, on the brief, were *Nathan A. Resnik* and *Cornelius T. Driscoll,* for the appellees (defendants).

MURPHY, J. The defendants are the owners of a residential lot at Indian Neck in Branford which they purchased in 1960 subject to restrictive covenants which ran with the land and were imposed by the plaintiff when, in 1952, it conveyed a larger parcel of land, including this lot, to predecessors in title of the defendants. The restrictions limited the garage accommodations on the defendants' lot to one garage for not more than three cars. The defendants began the construction of a one-family house on their property. To it was to be attached a structure used partly for boat storage and partly as a one-car garage. The defendants then started to excavate an area for a separate two-car garage at the rear of their lot. The plaintiff notified the

defendants that they were violating the building restrictions and instituted this action to enjoin them from erecting on their property more than one garage to accommodate three cars. In a special defense, the defendants alleged that the plaintiff had approved a site plan, including the detached two-car garage, which they had submitted to the plaintiff, that by so doing the plaintiff had waived the restriction, and that the plaintiff was therefore estopped from enforcing it. The trial court concluded, in effect, that the defendants had proved their special defense, and it denied the injunction. The plaintiff has appealed.

The restrictive covenants which ran with the land and are pertinent to this property are: "No structure shall be erected . . . on the premises . . . other than a one family detached dwelling house . . . and a private garage appurtenant to each dwelling for not more than three cars; . . . no building shall be erected . . . on the premises . . . until the external design and location thereof and the construction of the same have been approved in writing, by any three members of the Land and Building Committee of . . . [the] Grantor . . . ; . . . [the] Grantor does hereby reserve and retain the express right and power to vary, alter or change at will any and all restrictions and covenants contained herein and set forth above; . . . the Grantor reserves the right to make such changes, modifications or abrogations of restrictions in deeds of the conveyed premises . . . as in the judgment of the Grantor will best promote the development of . . . Indian Neck into a highly desirable residential section." The conveyance to the defendants was subject to these restrictions, among others, and specifically provided "that no more than one one-family

detached dwelling house may be erected . . . and . . . only one garage to accommodate three cars may be erected."

Article 8 of the articles of association of the plaintiff provides for the appointment at the annual meeting of a committee of three or more members to order the affairs of the society. A majority of this committee is empowered, "when authorized by a vote of the Society at a meeting duly called or warned for such purpose, [to] execute any conveyance, transfer, contract, quitclaim, grant, lease, instrument, or deed, of any and all real estate or other property, of said Society, or any interest or rights therein." In addition to that committee, other committees were provided for in article 9, including a land and building committee, "consisting of 8 members, which shall properly maintain, repair, keep and operate all land and buildings of . . . [the] Society."

Rudolph F. Bailey, chairman of the land and building committee, Joseph E. Buza and Edgar C. Taylor were designated by that committee as a subcommittee to approve plans for structures requiring approval. The defendants, in March, 1961, submitted a set of plans, consisting of three sheets of paper, to Bailey. The top sheet was labeled "site plan." It depicted, in addition to the property line and the building line, the outline of an area labeled "residence," with the attached garage and boat storage section labeled as such, and, some distance away to the rear, the outline of an area labeled "2 car garage." The outline of the dwelling and the attached structure is much heavier and darker than the outline of the detached garage. The second sheet presented the front elevation of the house and the attached appurtenances. The third sheet showed

the rear elevation of the same building. Bailey turned the plans over to the other two members of the subcommittee, and they endorsed their approval on the second sheet. Through Bailey, the plans were returned to the defendants, who obtained bids and contracted to have the dwelling but not the detached garage built. The defendants intended the garage to be a "do it yourself" operation. The foundation for the dwelling was being poured and the area of the detached garage was being prepared for construction when Bailey called the defendants' attention to the violation of the building restrictions. The court found that the defendants had entered into the construction of the dwelling in reliance on the approval of the plans by the land and building committee.

The plaintiff claims no advantage in the fact that the approval signatures on the second sheet did not include Bailey's name. For five years previously, it had been customary for but two of the three members to sign their approval. The plaintiff does, however, maintain that the approval on the second sheet could not be construed as approval of a second garage, especially in view of the fact that the plans nowhere included the external design of that garage. Furthermore, the plaintiff contends that, even if the action of the subcommittee could be deemed to be approval of the location of the two-car detached garage, the construction of it would still have to receive approval. Otherwise, an unsightly or inharmonious structure, unsuited to the highly desirable residential development, might result. The fact that the subcommittee did not endorse approval on the site plan as distinguished from the front elevation sheet, together with the fact that there is no finding that it was the prac-

tice of the subcommittee to endorse approval on but one of the several sheets in a plan, lends strength to these claims.

The court, however, has found that on at least one previous occasion the plaintiff waived the restrictions in the deeds and that a newly constructed home in the area has a garage in the basement and a detached two-car garage. Both of these findings have been challenged by the plaintiff. Bailey, on cross-examination, admitted that on one occasion the restrictions were abrogated, modified, or changed. To show that this relaxation of the restrictions had taken place by the specific authorization of the plaintiff itself, rather than by a committee, the plaintiff sought to introduce two pages of its minute book. Although the objections of the defendants were not properly made, the court sustained them. We are precluded from finding reversible error in the ruling because the minutes were not marked as an exhibit for identification. *Jackson* v. *Waller,* 126 Conn. 294, 305, 10 A.2d 763; *Roberti* v. *Barbieri,* 105 Conn. 539, 543, 136 A. 85; Maltbie, Conn. App. Proc., p. 183 § 147, p. 393 § 310. There was evidence from which the court could make the findings which are challenged.

The plaintiff has abandoned its effort to have the finding corrected by the adoption of the findings of fact in the draft finding. The plaintiff is not entitled to any material corrections in the finding. Therefore, it is necessary to determine whether the conclusions find sufficient support in the facts found. It does not so appear. There is no finding that the plaintiff authorized any change, modification or abrogation of the restrictions applying to the defendants' property. There is no finding that a committee, rather than the plaintiff, waived the restric-

tions in the instance related by Bailey. That leaves, as the only fact from which a course of conduct could be inferred, the single finding that a newly constructed home in the area has a garage in the basement and a detached two-car garage. The circumstances under which this construction took place, as well as whether, in fact, any waiver to allow it was authorized and, if so, by whom, do not appear. One instance is insufficient to predicate waiver in this case. *Cyclone Fence Co.* v. *McAviney*, 121 Conn. 656, 659, 186 A. 635, and cases cited.

The finding of facts does not support the conclusions that the land and building committee was entrusted with powers beyond those set forth in the articles of association; that the committee approved the location of the detached two-car garage; that the committee had the power to waive the restrictions; that the plaintiff, through the committee, waived those restrictions; or that the plaintiff was estopped from enforcing the restrictions. The plaintiff was entitled to judgment.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.